# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:15CV-00251-JHM**

**BRECKINRIDGE HEALTH, INC., et al.**                    **PLAINTIFFS**

**V.**

**SYLVIA MATHEWS BURWELL,**
**SECRETARY OF HEALTH AND HUMAN SERVICES**                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment by the parties [DN 28, DN 31].  Plaintiffs, Breckinridge Health, Inc. d/b/a Breckinridge Memorial Hospital ("Breckinridge"), New Horizons Health Systems, Inc. d/b/a New Horizons Medical Center ("New Horizons"), Livingston Hospital and Healthcare Services, Inc. ("Livingston"), Bowling Green-Warren County Community Hospital Corporation d/b/a The Medical Center at Scottsville ("Scottsville"), The Medical Center at Franklin, Inc. ("Franklin"), Appalachian Regional Healthcare, Inc. d/b/a McDowell ARH Hospital ("McDowell"), Appalachian Regional Healthcare, Inc. d/b/a Morgan County ARH Hospital ("Morgan County"), and Carroll County Memorial Hospital Corporation ("Carroll County"), bring this action pursuant to Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*, seeking judicial review of a final Medicare reimbursement decision by the Secretary of the Department of Health and Human Services ("HHS" or "the Secretary").  The Secretary determined that the Medicare reimbursement for Plaintiffs' provider tax expenses should be offset by the amount of the Medicaid Disproportionate Share Hospital ("DSH") payments the Hospitals received from the Commonwealth of Kentucky in Fiscal Years 2009 and 2010.  Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

Medicare, Title XVIII of the Social Security Act, is a federally funded health insurance program for the elderly and disabled. 42 U.S.C. §§ 1395—1395cc.  Medicaid, Title XIX of the Social Security Act, "is a federal grant program—unavailable to Medicare recipients—that requires each state to create federal-state partnerships to provide certain medical services to individuals 'whose income and resources are insufficient to meet the costs of necessary medical services.'"  Jackson Purchase Medical Center v. United States Dept. of Health and Human Services, 122 F. Supp.3d 668, 669 (E.D. Ky. 2015)(quoting 42 U.S.C. § 13961).

### A.  Medicare Provisions

Part A of the Medicare statute provides health insurance for inpatient hospital medical services. 42 U.S.C. §§ 1395c, 1395d. "Under Part A, a participating hospital enters into an agreement with the Secretary whereby the hospital promises to render services to Medicare beneficiaries. § 1395cc. The hospital does not charge the Medicare beneficiaries for the services (except for certain deductible and coinsurance amounts), but instead, the federal government directly reimburses the hospital for the services rendered. § 1395cc(a)(1)."  University of Kansas Hospital Authority v. Sebelius, 953 F. Supp. 2d 180, 182 (D.D.C. 2013).

"[A] hospital is not reimbursed at the time of service, but rather, the hospital must file an annual report showing the costs it incurred during the fiscal year and the portion of those costs allocated to Medicare. 42 C.F.R. §§ 413.24, 413.50." University of Kansas Hospital Authority, 953 F. Supp. 2d at 182.  "The report is filed with a fiscal intermediary ('FI')[or Medicare Administrative Contractors], which is typically a private insurance company acting under contract with the Secretary. 42 U.S.C. § 1395ww(d)(5), 42 C.F.R. § 413.20(b).  After auditing the hospital's report, the FI determines the amount of reimbursement owed to the hospital by

2

Medicare through the issuance of a Notice of Program Reimbursement ('NPR'). 42 C.F.R. § 405.1803(a)." Id.  "If the hospital is dissatisfied with the FI's award, it has 180 days to appeal to the Provider Reimbursement Review Board (the "PRRB"), which issues a decision that the Secretary may reverse, affirm, or modify within sixty days. 42 U.S.C. § 1395oo(f)(1).  If the hospital remains dissatisfied after either the PRRB or the Secretary issues a final decision, it may seek judicial review by filing suit in the appropriate federal district court." Id.

Generally, hospitals are not reimbursed for the actual cost of treating Medicare beneficiaries.  Instead, Medicare reimburses most hospitals through a prospective payment system based on pre-set rates based on a patient's diagnosis at discharge.  42 U.S.C. § 1395ww(d).  However, the Plaintiffs in this action are all Kentucky hospitals that are designated as Critical Access Hospitals.  The Medicare Rural Hospital Flexibility Program permits states to designate an acute care hospital as a Critical Access Hospital if it meets certain criteria – most importantly that the hospital be located in a rural area and have no more than 25 acute care beds. See 42 U.S.C. § 1395i-4.  Critical Access Hospitals are not reimbursed on a pre-set basis, rather they are reimbursed for their reasonable and necessary costs for providing inpatient hospital services to Medicare patients.  42 U.S.C. § 1395x(v).  The Medicare regulations require that those costs be offset for amounts such as discounts, allowances, and refunds that defray part of the claimed cost to which they relate. 42 C.F.R. § 413.98.

### B.  Medicaid

"Medicaid is a state-specific program where, pursuant to a federally approved 'state Medicaid plan,' the federal government provides matching payments for medical assistance to eligible, low-income individuals." Jackson Purchase Medical Center, 2015 WL 4875112, *2. The "state Medicaid plan" specifies the qualifications for eligibility and establishes the nature

and scope of the medical care and services covered pursuant to the state plan. 42 C.F.R. § 430.10. "Accordingly, Medicaid programs vary from state to state, both with respect to persons and services covered, and to the scope and duration of benefits." <u>Verdant Health Commission v. Burwell</u>, 127 F. Supp.2d 1116, 1118 (W.D. Wash. Sept. 1, 2015). Once a state's Medicaid plan is approved, the Secretary "is authorized to pay the state matching funds for Medicaid expenditures," commonly referred to as Federal Financial Participation. <u>Waterbury Hospital Center v. Sebelius</u>, 2012 WL 4512506, *2 (D. Conn. Sept. 29, 2012); 42 U.S.C. §§ 1396a, 1396b(a)(1), 1396d(b).

### C. Medicaid DSH, Kentucky's Medicaid Plan, and KP-Tax

The federal Medicaid program requires states to create a plan to provide additional payments to hospitals that serve a disproportionate share of low-income patients. 42 U.S.C. § 1396(a)(13)(A); 1396r-4(a)(1). These payments are referred to as Medicaid Disproportionate Share Hospital ("DSH") payments. "A state is given considerable discretion in determining how to calculate Medicaid DSH adjustments under its plan." <u>Waterbury Hospital Center</u>, 2012 WL 4512506, *2. The Kentucky Medicaid Plan established the requirements for statewide Medicaid eligibility.

The parties agree that Kentucky calculates its Medicaid DSH payments on the amount of uncompensated services that the hospitals provide to low-income patients who are not eligible for Medicaid, Medicare, or private insurance. The federal government provides matching funds for a state DSH program once the state contributes its portion. During the fiscal years in question, Kentucky's financial contribution to its Medicaid DSH program came from two sources: $27 million from the Kentucky Provider Tax Revenue ("KP-Tax" or "provider tax") and approximately $36 million from state university hospitals. (AR at 825.)

To obtain the KP-Tax revenue, Kentucky imposes a 2.5% tax on the gross revenues of hospitals, including the Plaintiff Hospitals here. Kentucky deposits 100% of the revenue from the KP-Tax into the Medical Assistance Revolving Trust ("MART") fund. Approximately 15% of the MART funds are used to partially fund the payments to hospitals that serve a disproportionate share of uninsured, low income patients who do not qualify for Medicare or Medicaid. (AR at 825.) In Kentucky, the amount of Kentucky's contribution to the Medicaid DSH program is matched at 70 percent by the federal government. (AR at 827.) The Medicaid DSH payments cover approximately 45% of the cost of providing care to these low-income patients during previous fiscal years.

### D. Administrative Proceedings

As noted earlier, under the Medicare Act, Critical Access Hospitals are reimbursed for their reasonable and necessary costs for providing inpatient hospital services to Medicare patients. 42 U.S.C. § 1395x(v). The Medicare Act defines "reasonable costs" of services as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C.A. § 1395x(v)(1)(A). The Medicare regulations clarify how to determine the "cost actually incurred" requiring that costs be offset for amounts such as discounts, allowances, and refunds that defray part of the claimed cost to which they relate. 42 C.F.R. § 413.98.[1] Pursuant to the Secretary's regulations, "refunds of previous expense payments are to be treated as reductions of related expense." Abraham Lincoln Memorial Hosp. v. Sebelius, 698 F.3d 536, 551 (7th Cir. 2012)(citing 42 C.F.R. § 413.98(a); Manual § 800 (Rev. 450)). "Accordingly, the regulations and related Manual provisions employ a net cost approach for determining the amount of reimbursable expenses and provide that

---

[1] Specifically, 42 C.F.R. § 413.98(d) provides that "[a]s with discounts, allowances, and rebates received from purchases of goods or services, refunds of previous expense payments are clearly reductions in costs and must be reflected in the determination of allowable costs." 42 C.F.R. § 413.98(d)(2).

refunds are reductions, or offsets, of a related expense." Id. "In determining allowable costs, the Secretary should not look at costs in a vacuum, but must look at the totality of the circumstances." Abraham Lincoln, 698 F.3d at 552 (citing 42 C.F.R. §§ 413.5(c), 413.98).

Plaintiffs filed cost reports for fiscal years 2009 and 2010 claiming their entire KP-Tax payment as a "reasonable cost" for which they sought reimbursement under the Medicare Act. From 1994 to 2009, the Plaintiffs received full reimbursement for this cost under the Medicare reasonable cost statute. 42 U.S.C. § 1395x(v). However, in audits of the Plaintiffs' cost reports for fiscal years 2009 and 2010, the Medicare Administrative Contractor (MAC) denied full reimbursement and, instead, offset the Plaintiffs' provider tax cost by the amount of Medicaid DSH payments the Plaintiffs had received from the Commonwealth of Kentucky in each of the two fiscal years. (AR at 14.)

Plaintiffs challenged the MAC's offsets for Fiscal Years 2009 and 2010 by appealing to the Provider Reimbursement Review Board ("PRRB"). Plaintiffs maintained that the MAC's failure to allow full reimbursement for the KP-Tax expenses disregarded the express language of the Medicare reasonable cost statute and regulations. The PRRB consolidated Plaintiffs' appeals and held a consolidated hearing on the record on April 2, 2014. By decision dated February 10, 2015, the PRRB upheld the auditor's reductions or offsets of Plaintiffs' provider tax expenses. The PRRB found that the KP-Tax and the Medicaid DSH payment are related noting that the source of the Medicaid DSH payment is the KP-Tax. (AR 11-12.) The PRRB held that when the hospitals received a Kentucky Medicaid DSH payment, they were actually receiving a refund of some or all of the money paid as KP-Tax. Accordingly, the PRRB determined the "cost actually incurred" is the gross KP-Tax assessment paid by the hospital less the Medicaid DSH payment received by the hospital for the same fiscal year. (AR 16.)

Plaintiffs appealed the PRRB's decision to the Administrator of the Centers for Medicare & Medicaid Services who issued a final decision on March 27, 2015.  (AR 7.)  The CMS Administrator declined to reverse or modify the PRRB decision.  The Administrator's decision constitutes the final administrative decision of the Secretary.  As a result of this decision, Plaintiffs filed this action asserting violations of the Administrative Procedure Act.  The parties have filed cross-motions for summary judgment.

## II. STANDARD OF REVIEW

The Supreme Court has established a two-step process for reviewing an agency's interpretation of a statute that it administers.  Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  "'First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'"  Clark Regional Medical Ctr. v. United States Dept. of Health and Human Servs., 314 F.3d 241, 244–45 (6th Cir. 2002)(quoting Jewish Hosp., Inc. v. Secretary of Health and Human Servs., 19 F.3d 270, 273 (6th Cir. 1994) (emphasis in original)).  The Supreme Court has explained that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."  Clark Regional Medical. Ctr., 314 F.3d at 245 (quoting Chevron, 467 U.S. at 843 n. 9).

Second, if the Court determines that Congress has not directly addressed the precise question at issue, that is, that the statute is silent or ambiguous on the specific issue, the Court must determine "'whether the agency's answer is based on a permissible construction of the statute.'"  Clark Regional Medical Ctr., 314 F.3d at 245 (quoting Jewish Hosp., 19 F.3d at 273). "In assessing whether the agency's construction is permissible, [the Court] 'need not conclude

that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading [the Court] would have reached if the question initially had arisen in a judicial proceeding." Id. at 245.  "In fact, the agency's construction is entitled to deference unless 'arbitrary, capricious, or manifestly contrary to the statute.'" Id. (quoting Chevron, 467 U.S. at 844).

"Pursuant to 42 U.S.C. § 1395oo(f)(1), a decision by the [CMS] is subject to review under the [APA], 5 U.S.C. § 706(2)(A)."  Battle Creek Health System v. Leavitt, 498 F.3d 401, 409 (6th Cir. 2007)(quoting Clark Regional Med. Ctr., 314 F.3d at 245).   Under the APA, the Court reviews an agency decision to see whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accord with law." Id. (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)). "Under the APA, an agency's interpretation of a regulation must be given controlling weight unless it is 'plainly erroneous or inconsistent with the regulation.'" Id.

### III.  DISCUSSION

#### A.  Review of Secretary's Interpretation of Medicare Statutory Language

The question before the Court is whether the agency's decision to offset the KP-Tax cost by the amount of Medicaid DSH payments received is arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

Here, the record reflects that all of the KP-Tax assessments paid by the Plaintiffs were placed into the MART Fund.  The MART Fund then utilized a portion of those funds to pay Medicaid DSH payments to the Plaintiffs.  The PRRB looked at the net economic impact of the Plaintiffs' receipt of the Medicaid DSH payments in relation to the cost associated with the KP-Tax assessment.  In so doing, the PRRB assessed whether the Medicaid DSH payments served to reduce a related expense, such that they constituted a refund of the KP-Tax assessments, and

concluded that the Medicaid DSH payments were indeed intended to reduce the cost of the KP-Tax assessment. Specifically, the PRRB found

> that when [Plaintiffs] received a Kentucky Medicaid DSH distribution, it is necessarily receiving back from the MART Fund some or all of the money that it paid into the MART Fund when it paid the KP-Tax assessment.  Thus, the Board concludes that the Medicare contractor correctly determined that the gross KP-Tax assessed on [Plaintiffs] during the fiscal years at issue is not the "cost actually incurred" but rather that [Plaintiffs'] gross KP-Tax assessment for a fiscal year must be offset by the Medicaid DSH payment received for the same fiscal year.

(AR at 16.)  The Court finds that the decision of the PRRB and its adoption by the Secretary is supported by substantial evidence.

The Seventh Circuit in Abraham Lincoln Memorial Hospital v. Sebelius supports this conclusion.  698 F.3d 536 (7th Cir. 2012).  In Abraham Lincoln, the Illinois Department of Public Aid collected tax assessments and deposited the assessments in a Hospital Provider Fund. Like the MART Fund, the Hospital Provider Fund in Illinois was comprised of the tax assessments and other funds.  The hospitals that paid money into the Hospital Provider Fund received payments back from the fund as additional Medicaid payments, referred to as access payments.  See Dana Farber Cancer Institute Boston, Massachusetts v. Bluecross Blueshield Association, 2014 WL 11127854, *11 (PRRB May 28, 2014)(overview of Abraham Lincoln). The Seventh Circuit found that the MAC's decision to treat the access payments as refunds and offset these payments against the tax assessments was in keeping with the statutes and regulations.  Id.  The Seventh Circuit determined that "there was substantial evidence that the access payments were linked to the tax assessments, including the fact that the access payments were disbursed out of the same fund into which the tax assessments were paid." Id. The Seventh Circuit "emphasized that the key to determining the costs that the provider actually incurred was

the 'real net economic impact' of the payments." Id. "Because the real net economic impact of the access payments that the provider received was to reduce the full cost of the tax assessments that the provider paid, the Seventh Circuit affirmed the . . . Administrator's decision that required tax payments to be offset by payments received from the funds into which the taxes were paid." Id.   The Seventh Circuit's decision in Abraham Lincoln is consistent with the Secretary's decision in the present case.

Plaintiffs attempt to distinguish Abraham Lincoln and other cases cited by the Secretary claiming that unlike these cases, the Medicaid DSH program as set up in Kentucky was specifically designed to achieve the result of the partial compensation of indigent care, not the partial or full reimbursement of provider tax assessments.  Plaintiffs argue that it is plainly erroneous to conclude that the provider tax paid by Plaintiffs was not "actually incurred" in full for purposes of 42 U.S.C. § 1395x(v), when the DSH payments at issue did not even fully reimburse the costs of services that Plaintiffs were required by KRS § 205.640 to provide in order to qualify in the first place for receipt of the DSH payments. (AR at 866-869.)  Plaintiffs argue that their Medicaid DSH payments did not lessen the KP-Tax liability incurred by them, rather they served to reduce the cost of furnishing care to the low-income uninsured patients. Accordingly, Plaintiffs maintain that the KP-Taxes and the Medicare DSH distributions are not related or linked, and Abraham Lincoln is not applicable.

Despite some differences between the programs in Illinois and Kentucky, both the District Court and the Seventh Circuit in Abraham Lincoln addressed and rejected the same arguments raised by Plaintiffs in the present case.  For example, in Abraham Lincoln, the hospitals argued that the Medicaid payments were not related or linked to the tax expenditures, but rather were solely designed by the State and approved by CMS to enable hospital services for

Medicaid beneficiaries.  Specifically, the hospitals argued that they "paid tax assessments to the State of Illinois but the Medicaid payments to the Hospitals were not made to avoid or reduce the tax expenses, but rather, to reimburse the Hospitals for hospital services to Medicaid beneficiaries." Abraham Lincoln Memorial Hospital v. Sebelius, 3:10CV-03122, Plaintiffs' Combined Memorandum in Opposition to Defendant's Motion for Summary Judgment, DN 19 at 7-8 (C.D. Ill. January 28, 2011).  In rejecting this argument, the Seventh Circuit concluded that the Medicaid payments were related or linked to the provider tax assessments finding significant the fact that the Medicaid payments were disbursed out of the same fund into which the tax assessments were paid.  Ultimately, the Seventh Circuit concluded that under the Medicare Act, the Secretary's construction of the term costs "actually incurred" was based upon a reasonable interpretation of the statutory term and affirmed the Secretary's conclusion that provider taxes may be included as allowable costs on Medicare costs reports, but these costs must be offset by Medicaid payments funded by the provider taxes.

After a review of the statutory and regulatory language and the relevant case law, the Court similarly finds that the Secretary's construction of the term "cost actually incurred" is based on a reasonable interpretation of the statutory term.  The Court finds that the Secretary's decision to offset the KP-Tax reimbursement by the Medicaid DSH payments received from the MART Fund was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

### B.  Prior Interpretation

Plaintiffs maintain that the Secretary's current interpretation of Medicare's reasonable cost statute conflicts with the Secretary's prior interpretation of the reasonable cost statute as expressed in the Final Rule of August 16, 2010. (AR at 902-904.)  Plaintiffs represent that the

Final Rule construed the "actually incurred" provision of the cost statute to justify an offset to the provider tax cost allowance only in limited circumstances, i.e. when a related receipt of funds was made specifically to make the provider whole or part whole for the tax expenses.  Plaintiffs contend that that the Final Rule interpretation is in direct conflict with the current interpretation that any payment to a provider, if in some manner related to the tax, justifies a reduction in the tax expenditure allowance.

The Court rejects Plaintiffs' argument.  An examination of the Final Rule as a whole reflects that it is not inconsistent with the Secretary's current interpretation of Medicare's reasonable cost statute.  In addition to the language relied upon by Plaintiffs, the Final Rule also provides in part that

> in accordance with the Medicaid statute and regulations, some States levy tax assessments on hospitals.  The assessed taxes may be paid by the hospitals into a fund that includes all taxes paid, all Federal matching monies and any penalties for nonpayment.  The State is then authorized to disburse monies from the fund to the hospitals.  We believe that these types of subsequent disbursements to providers are associated with the assessed taxes and may, in fact, offset some, if not all, of the taxes originally paid by the hospitals.

(AR 568).  The Final Rule requires evidence that the Medicaid DSH payment and the provider tax are related in some manner prior to offsetting the Medicaid DSH payment from the provider tax under the Medicare Act.  This is consistent with the Secretary's decision in the present case.

**C.  Long-Standing Practice**

From 1994 to 2009, the Secretary did not offset Kentucky's provider tax payments with indigent care payments.  Plaintiffs contend that there is no reason to accord deference to the Secretary's decision because the Secretary's "current view is a change from prior [longstanding] practice." Decker v. Northwest Environmental Defense Center, 133 S.Ct. 1326, 1337 (2013).

The Seventh Circuit in <u>Abraham Lincoln</u> rejected this argument finding that the Secretary's decision was not inconsistent with a prior policy statement.  <u>Abraham Lincoln</u>, 698 F.3d at 557. As noted by the Seventh Circuit, a "federal agency does not establish policy by not taking administrative action." <u>Id</u>. (citing <u>Cooper Indus., Inc. v. Aviall Services, Inc.</u>, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."). The Court adopts the reasoning of the Seventh Circuit and finds that the Secretary's decision in the present case is not inconsistent with prior policies.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by Plaintiffs [DN 28] is **DENIED** and the motion for summary judgment by Defendant, Sylvia Mathew Burwell, Secretary of Health and Human Services, [DN 31] is **GRANTED**.  A Judgment shall be entered consistent with this Opinion.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

June 15, 2016

cc: counsel of record